IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-64

Filed: 6 October 2015

Wake County, No. 13 CVS 15711

WILLIAM SHANNON, M.D., Plaintiff,

v.

BOB TESTEN, JOSPEH P. JORDAN, and NORTH CAROLINA PHYSICIANS HEALTH PROGRAM, INC., Defendants.

Appeal by plaintiff from judgment entered 5 September 2014 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 11 August 2015.

> *Wyrick, Robbins, Yates & Ponton, LLP, by Tobias S. Hampson, for plaintiff-appellant.*

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Michael E. Weddington and Robert E. Desmond, and Cranfill Sumner & Hartzog LLP, by Beth R. Fleishman, Jaye E. Bingham-Hinch, and Ginger B. Hunsucker, for defendants-appellees.*

DIETZ, Judge.

In 2010, Defendants performed an assessment of Plaintiff William Shannon, a physician, at the request of Gaston Memorial Hospital, where Dr. Shannon had staff privileges. Based on Defendants' evaluation, the hospital terminated Dr. Shannon's staff privileges.

Dr. Shannon then sued Defendants alleging that they breached statutory duties owed to him during the evaluation process. Dr. Shannon also alleged that Defendants violated statutory due process rights established by applicable federal and state peer review laws. The trial court dismissed Dr. Shannon's complaint for failure to state a claim upon which relief could be granted, and Dr. Shannon timely appealed.

We affirm the trial court. Dr. Shannon concedes that N.C. Gen. Stat. § 90-21.22(f) provides a statutory immunity to Defendants absent allegations of bad faith. Here, Dr. Shannon's complaint alleges that Defendants' evaluation contained factual errors and omissions, but does not allege that those errors and omissions were intentional or otherwise done in bad faith. As a result, the complaint fails to allege facts sufficient to overcome Defendants' statutory immunity.

Likewise, Dr. Shannon's due process allegations fail to state a claim upon which relief can be granted. Even assuming Dr. Shannon can bring a direct cause of action against Defendants under the statutory due process language on which he relies, that language requires only that "peer review agreements shall include provisions assuring due process." N.C. Gen. Stat. § 90-21.22(b). Here, Dr. Shannon's complaint alleges that the agreement contains provisions ensuring that Defendants' activities will "be in accordance with due process." Thus, on its face, the complaint

fails to allege facts sufficient to state a claim for violation of the statute. Accordingly, we affirm the trial court's judgment.

## Facts and Procedural History

The following facts are taken from Dr. Shannon's complaint, accepting all allegations as true and drawing all reasonable inferences in his favor. *See Thompson v. Waters*, 351 N.C. 462, 462-63, 526 S.E.2d 650, 650 (2000) (citations omitted).

Dr. Shannon is a licensed medical doctor practicing ophthalmology in Gastonia, North Carolina. He had staff privileges at Gaston Memorial Hospital, where he had been on the medical staff since 1980. As a result of two patient incidents, Gaston Memorial requested Dr. Shannon "undergo a comprehensive neuropsychiatric assessment as part of their evaluation." Gaston Memorial made this request to assess whether Dr. Shannon had any physical, psychiatric, emotional, or substance abuse related illness, or personal health issues that may have contributed to the incidents in question. Dr. Shannon's Gaston Memorial privileges were temporarily suspended, pending the results of this requested evaluation.

Dr. Shannon cooperated with Gaston Memorial's request and submitted to evaluations by both a psychologist and a psychiatrist in Charlotte in late August and early September of 2010. The psychiatrist reported that his and the psychologist's evaluations revealed no cognitive defects, psychiatric disorders, delusional thinking, hallucinations, or memory issues. He also concluded that Dr. Shannon did not exhibit

dementia or psychiatric illnesses that would affect his performance as a medical doctor.

Gaston Memorial then referred Dr. Shannon to North Carolina Physicians Health Program, Inc. ("NCPHP") and the two individual defendants for further evaluation. Dr. Shannon met with Defendants Testen and Jordan for approximately two hours on or about 29 November 2010. At the time of the meeting, Testen was a licensed clinical social worker and served as a consultant and clinical coordinator for NCPHP. Jordan was a counselor and employee of NCPHP. NCPHP is a North Carolina not-for-profit corporation operating under an agreement with the North Carolina Medical Board pursuant to N.C. Gen. Stat. § 90-21.22(b), a state law governing peer review agreements.

During the meeting, Dr. Shannon gave Testen and Jordan names of witnesses he believed would have relevant information regarding his behavior and the incidents that gave rise to the evaluation by NCPHP. He also identified documents, including hospital and patient records, that supported his position and explained the two incidents. However, Testen and Jordan did not consult these witnesses and documents.

Following the 29 November 2010 meeting, Testen and Jordan prepared an "initial assessment" letter and gave it to the North Carolina Medical Board and Gaston Memorial. The letter stated that Dr. Shannon had no alcohol or substance

abuse issues, no legal issues, and no history of psychiatric illness. The letter also stated that Dr. Shannon was "cooperative and forthcoming," and complied with their drug testing and other informational requests "without hesitation." But, according to Dr. Shannon, the assessment letter contained factual errors and significant omissions regarding the two incidents in question.[1] Testen and Jordan concluded their assessment letter with a recommendation that Dr. Shannon immediately obtain further professional evaluation.

Testen and Jordan repeated their recommendation for further professional evaluation in a 4 January 2011 letter sent to Dr. Shannon and copied to the North Carolina Medical Board. In this letter Testen and Jordan also stated that they had continued to gather information from Dr. Shannon's earlier psychological and psychiatric evaluations in Charlotte and that, "this information has been informative and concerning." The January letter did not explain what was "concerning" about the information Testen and Jordan had gathered.

In December 2010, Gaston Memorial informed Dr. Shannon that, based on information provided by Defendants, his staff privileges would not be reinstated. Dr. Shannon volunteered his license to the North Carolina Medical Board in February 2011.

---

[1] The complaint does not specifically identify these alleged errors and omissions.

On 26 November 2013, Dr. Shannon sued Testen, Jordan, and their employer, NCPHP, alleging that Testen and Jordan were negligent in performing their evaluations, and that NCPHP was vicariously liable as their employer. On 23 June 2014, Dr. Shannon filed an amended complaint, adding a claim for violation of due process under federal and state statutory law governing the peer review process, but leaving the original negligence claim unaltered.

Defendants moved to dismiss Dr. Shannon's amended complaint pursuant to Rule 12(b)(6), arguing that they were immune from suit under N.C. Gen. Stat. § 90-21.22(f) and that Dr. Shannon had failed to state any claim upon which relief may be granted. On 5 September 2014, the trial court granted the motion. Dr. Shannon timely appealed.

**Analysis**

This Court reviews the grant of a Rule 12(b)(6) motion to dismiss *de novo*. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d. 794, 796 (2013). We examine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Id.* (citations omitted). Dismissal is only appropriate if "it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim." *Scadden v. Holt*, 222 N.C. App. 799, 801, 733 S.E.2d 90, 91-92 (2012) (citations omitted).

## I.    Negligence Claim

Dr. Shannon first argues that his complaint states a claim for breach of duties that Defendants owed him under the applicable peer review statutes.  Dr. Shannon acknowledges that to state a claim in this context he must allege that the Defendants acted in bad faith, thus overcoming the statutory immunity provided in N.C. Gen. Stat. § 90-21.22(f).  Dr. Shannon contends that the Court should infer bad faith from the express allegations in the complaint.  For the reasons discussed below, we reject Dr. Shannon's argument.

N.C. Gen. Stat. § 90-21.22 governs peer review agreements by the North Carolina Medical Board concerning programs for impaired physicians.  The statute provides an immunity to suit for those participating in the peer review process:  "Peer review activities conducted in good faith pursuant to any agreement under this section shall not be grounds for civil action under the laws of this State."  N.C. Gen. Stat. § 90-21.22(f).  As a result, a plaintiff suing individuals or corporations involved in this statutory peer review process must allege bad faith in order to survive a Rule 12(b)(6) motion.

To allege bad faith, the complaint must do more than allege mere negligence.  Bad faith requires some showing of intentional dishonesty or a wrongful motive.  As our Supreme Court has observed, "[bad faith] implies a false motive or a false purpose, and hence it is a species of fraudulent conduct.  Technically, there is, of

course, a legal distinction between bad faith and fraud, but for all practical purposes bad faith usually hunts in the fraud pack." *Bundy v. Commercial Credit Co.*, 202 N.C. 604, 163 S.E. 676, 677 (1932).

Here, Dr. Shannon's complaint fails to allege bad faith. Indeed, the complaint does not even contain a conclusory allegation that Defendants acted in bad faith; to the contrary, the allegations read like a run-of-the-mill negligence claim. The complaint alleges that Defendants committed various mistakes in the peer review process:

> 17. Upon information and belief, the individual defendants did not interview necessary witnesses with knowledge of what had occurred on the two incidents in question.
>
> 19. The initial assessment by the individual defendants contained factual errors and significant omissions regarding the two incidents in question that cast Dr. Shannon in a poor light professionally.
>
> 23. Upon information and belief, the individual defendants did not interview the individuals who Dr. Shannon identified as having relevant information . . . and did not review the relevant hospital and patient records with him or with eyewitnesses to the events in question.

None of these allegations suggest the report's alleged "factual errors" and "omissions" were intentional. Moreover, the complaint contains a number of allegations indicating the defendants acted in *good faith*:

> 20. The individual defendants in their initial assessment, accurately stated that Dr. Shannon does not have difficulties with alcohol or substance abuse, has no history

of mental or psychiatric illness or legal issues; and the defendants found Dr. Shannon "cooperative and forthcoming."

21. The individual defendants reported that Dr. Shannon "without hesitation" completed their request for a urine drug screen and complied with their request to sign a release allowing the individual defendants to speak with members of the hospital, as well as the psychologist and psychiatrist who had previously evaluated him.

27. During the December 30, 2010, telephone conversation . . . defendant Jordan extended the time limit for [Dr. Shannon] making an appointment for evaluation to January 30, 2011.

Dr. Shannon argues that this Court should *infer* bad faith from the fact that defendants provided little specific information to him during their inquiry and that their report ultimately contained at least some factual errors and omissions. But this is an inferential leap too far. In essence, Dr. Shannon contends that the Court should infer willfulness from carelessness. To do so would set aside the distinction between negligence and bad faith established in cases from this Court and our Supreme Court. *See Edwards v. Northwestern Bank*, 39 N.C. App. 261, 268, 250 S.E.2d 651, 656 (1979); *Bundy*, 202 N.C. at 607, 163 S.E. at 677. Accordingly, we hold that the complaint fails to allege bad faith—a necessary step in overcoming the legal immunity afforded by N.C. Gen. Stat. § 90-21.22(f)—and therefore fails to state a claim upon which relief can be granted.

## II.    Due Process Claim

Dr. Shannon next argues that his complaint states a claim for violation of statutory due process protections provided by the applicable federal and state peer review laws.  We disagree.

As an initial matter, Dr. Shannon cannot pursue a claim under the federal law, the Health Care Quality Improvement Act, because that statute does not provide a private cause of action.  *Hancock v. Blue Cross Blue Shield of Kan., Inc.*, 21 F.3d 373, 375 (10th Cir. 1994); *see also Bok v. Mut. Assurance, Inc.*, 119 F.3d 927, 928 (11th Cir. 1997) (per curiam); *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1147 (8th Cir. 1998); *Singh v. Blue Cross Blue Shield of Mass., Inc.*, 308 F.3d 25, 45 n.18 (1st Cir. 2002).

Dr. Shannon concedes that he does not—and cannot—pursue a private cause of action under the Health Care Quality Improvement Act.  But he argues that he can pursue a *state* common law claim for the violation of his statutory due process rights provided by the federal law.  To support this novel theory, Dr. Shannon cites our Supreme Court's holding that "the common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right."  *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992).  This language from *Corum* concerns rights established in the North

Carolina Constitution.[2] Thus, *Corum* does not permit a litigant to bring a state common law claim to enforce an alleged violation of a federal statute simply because federal law does not permit a private cause of action. *See Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339, 678 S.E.2d 351, 355 (2009); *Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428-29 (2010) (both limiting *Corum* to violations of the state Constitution). Accordingly, Dr. Shannon's claim based on federal law fails to state a claim upon which relief can be granted.

Dr. Shannon also asserts a claim under N.C. Gen. Stat. § 90-21.22(b), which provides that "peer review agreements shall include provisions assuring due process." We are not persuaded that the General Assembly intended for this provision to provide a private cause of action against third parties like the defendants in this case, who are subject to a peer review agreement with the North Carolina Medical Board. Rather, if the Medical Board failed to comply with the statutory obligation to ensure that "peer review agreements shall include provisions assuring due process," Dr. Shannon's claim, if one exists at all, ought to be directed at the Medical Board.

In any event, even assuming Dr. Shannon can sue Defendants for the alleged violation of N.C. Gen. Stat. § 90-21.22(b), the allegations in Dr. Shannon's complaint

---

[2] Dr. Shannon has not alleged a violation of his state constitutional due process rights in his complaint. He only alleges that Defendants violated his *statutory* due process rights under the applicable federal and state peer review laws, 42 U.S.C. § 11112 and N.C. Gen. Stat. § 90-21.22. But, even if Dr. Shannon's complaint could somehow be read to allege a constitutional violation, it never alleges the trigger of state constitutional due process rights: state action. To the contrary, it alleges that Defendant NCPHP is a private corporation and the individual Defendants are NCPHP employees.

establish that Defendants complied with the statute. The statute requires only that "peer review agreements shall include provisions assuring due process." *Id*. Dr. Shannon alleges that the "'memorandum of understanding' between Gaston Memorial Hospital and the North Carolina Medical Board, pursuant to North Carolina General Statute § 90-21.22(b) . . . requires the activities of Defendant NCPHP to be in accordance with due process." Simply put, the complaint itself alleges that the peer review agreement includes provisions assuring due process. Thus, Dr. Shannon's complaint fails to state a claim for violation of N.C. Gen. Stat. § 90-21.22.[3]

## Conclusion

For the reasons discussed above, the trial court did not err in dismissing Plaintiff William Shannon's Amended Complaint for failure to state a claim upon which relief can be granted.

AFFIRMED.

Judges BRYANT and STEPHENS concur.

---

[3] We also note that agency regulations create a thorough process for NCPHP to follow in conducting its assessment, and this process readily provides the sort of notice and opportunity to be heard necessary to satisfy basic due process rights. *See* 21 NCAC 32K.0201, 32K.0202. Dr. Shannon does not allege that these requirements were violated, and the allegations in the complaint establish that they were satisfied.